## ZEBULON WOODBURY *vs.* JOSIAH OBEAR.

On the trial of an appeal of an heir at law from the decree of the judge of probate allow-
ing a will, statements of the testator that said heir neglected him and attempted to
poison him, which have been admitted to show that the testator was under an insane
delusion, are not competent evidence of the truth of the facts stated.

Upon the trial of an issue of the sanity of a testator, an expert on the subject of insanity,
although he has heard all the testimony, is not to be asked, " Suppose all the facts stated
by the witnesses to be true, was the testator laboring under an insane delusion, or was
he of an unsound mind? "   But the facts upon which his opinion is asked should be
put to him hypothetically.

Upon the trial of an issue of the validity of a will, at which a former will has been offered
in evidence, the refusal of the presiding judge to answer an inquiry of a juror, as to
what would become of the property of the testator if the will on trial should be set aside,
is no ground for a new trial.

A verdict that a testator, at the time of executing an instrument offered for probate as
his will, was of unsound mind, and was unduly influenced, is not inconsistent.

The executor named in an instrument which has been approved as a will by the judge of
probate is not to be charged with the costs of an appeal, on which it is found that the
will was made under his undue influence.

APPEAL from a decree of the judge of probate, allowing an
instrument as the last will of Obed Woodbury of Beverly.

*Merrick,* J. submitted to a jury two issues: 1st. Whether
Obed Woodbury, at the time of executing the instrument, was
of sound mind; 2d. Whether said execution was obtained from
him by undue influence exercised by Josiah Obear, the person
named as executor therein.

After the appellee had produced the will, and called the three
subscribing witnesses, who testified to its due execution, the
appellant called several witnesses, whose testimony tended to
prove that the testator was always a person of feeble intellect,
a believer in witchcraft and in ghosts, and that he thought he
had communications with departed spirits ; and that, at the time
of executing said instrument, he labored under an insane delu-
sion that the appellant, who was his nephew and one of his two
heirs at law, and at one time had resided with him, neglected
him and attempted to poison him.

The appellee introduced evidence of the testator's statements
of the facts upon which this belief as to his nephew was

founded; and his counsel, in arguing the case to the jury, contended that these statements, in the absence of all controlling evidence, were to be taken to be true; but was stopped by the court, and told that the testator's statements had been admitted only for the purpose of showing the condition of mind of the testator, and were no evidence of the truth of the facts stated.

Dr. William Williams, who was permitted by the court to testify as an expert, and stated that he had heard all the evidence in the case, was asked by the appellee, by whom he had been called as a witness, this question : " Suppose all the facts stated by the several witnesses to be true, was Mr. Woodbury laboring under an insane delusion, or was he of an unsound mind ? " The presiding judge did not allow this question to be put, " for the reason," (as he stated in his report,) " that as a great number of facts and circumstances had been testified of by many witnesses, and as much evidence, parts of which were conflicting, had been introduced upon the trial, from which different persons might draw different inferences, and arrive at different conclusions as to what facts had been actually proved, the answer of the witness, if given in reply to the proposed interrogatory, might tend to mislead; since it might, unknown to the jury, be founded upon some proposition or statement of facts, differing in material particulars from that which appeared to them to be satisfactorily established. But he permitted the appellee's counsel to inquire of and obtain from the witness his opinion upon and in relation to any proposition or hypothesis which he, the appellee's counsel, supposed was sustained by the whole or any part of the evidence in the case; and the witness was thereupon examined in conformity to that rule, and testified in relation to various propositions suggested by the counsel; and he was also further examined, and testified generally and without objection in relation to the symptoms of monomania and insane delusion."

After the conclusion of the instructions to the jury, a juror stated that an instrument purporting to be a former will had been offered in evidence; and he desired to know, if the instru-

ment now produced as the last will should be disallowed, what would become of the property of the testator. The judge answered that that was wholly immaterial to the issues to be determined by the jury, and should not be allowed to influence the juror's mind. The juror then said there was a view in his mind in which it was material, and asked leave of the court to state that view. But the judge declined to hear the juror state it, and said he would violate his duty if he allowed considerations concerning the future ownership or disposition of the testator's property to have any influence upon his mind in determining the issues submitted to the jury; that the law would take care of the disposition of the property, if the instrument now produced as a will should not be established.

The jury returned a verdict in favor of the appellant upon both issues submitted to them. The appellee moved that the verdict might be set aside " as wholly inconsistent with itself, in finding both that the will was the product of an insane delusion, and was likewise the product of the undue influence of the executor." The judge overruled the motion, and reported the case to the full court.

*O. P. Lord & S. B. Ives, Jr.* for the appellee. 1. The truth or falsehood of the facts stated by the testator, as the foundation of his opinion of his nephew, was material in determining whether such opinion was well founded and rational; and, in the absence of controlling evidence, the facts stated by the testator as the foundation of his opinion must be presumed to be true.

2. The question to Dr. Williams should have been admitted. *Fenwick* v. *Bell*, 1 Car. & K. 312. *Commonwealth* v. *Rogers*, 7 Met. 505. It was in the form uniformly adopted in practice in this commonwealth, and the only form in which the witness's opinion of the testator's sanity, as appearing from all the facts proved, could be obtained. It is true that an expert is not to judge of the credibility of witnesses. But the result of the testimony of one class of witnesses may be opposed to that of another class, and yet no fact be contradictory of other facts. The question is whether, taking all the facts together, they show

insane delusion. The court or the jury may think the facts irreconcilable, and yet the expert see no inconsistency. The difficulty of answering the question is no objection to its competency. If the witness cannot take all the evidence to be true, he may object to answer, or answer in the alternative, taking the conflicting parts either way; or the counsel for the other party may vary the question by excluding those parts. To limit the inquiry to hypothetical questions may often require the party to restate all the evidence, or subject him to the imputation of not putting the whole case to the witness.

3. The court should have allowed the juror to state how, in his judgment, the existence of the prior will could bear upon this one, and to ask instructions upon the matter which he deemed important. In fact, that will had been produced and read to the jury, and contained a devise to a religious society in the neighborhood, of which several of the appellant's witnesses had testified that they were members, and were therefore so interested in the result of this controversy as might affect their credibility in the juror's mind.

4. The verdict was inconsistent with itself. Weakness of mind might be consistent with undue influence; but an insane delusion or monomania implies that the mind of the testator was entirely and exclusively under the influence of such delusion.

*S. H. Phillips*, for the appellant.

SHAW, C. J. 1. The court are of opinion that evidence tending to show that the testator was of feeble mind, and believed in ghosts and supernatural influences, had some tendency to show unsoundness of mind, or that weakness of mind which would be easily imposed upon by the exertion of undue influence. The testator's statement of facts respecting Zebulon, his heir, were admissible, as showing his state of mind, but they raised no presumption that the facts themselves were either true or false. If they were not proved to be false, or inconsistent with the relations in which the parties stood to each other, and with other facts proved or admitted, and not so intrinsically improbable, wild and strange as of themselves to show un-

soundness of mind, they would not go far to prove insane delusion; but the question was one of weight and not of competency; it was competent, and its weight was for the jury to consider.

2. We think the question put to Dr. Williams as an expert, asking his opinion whether, having heard the evidence, he was or was not of opinion that the testator was of sound mind, was not admissible in that form. This would be especially irregular where the evidence is conflicting, because it puts it in the, power of the expert to give an opinion upon the credibility of the testimony and truth of the facts, which is purely a question for the jury, and then upon the value and efficacy of the facts and circumstances, in his opinion thus proved, upon the question of soundness of mind. We think the question, as modified by the court and then admitted, was correct, to put the case hypothetically; as thus: If certain facts, assumed by the question to be established by the evidence, should be found true by the jury, what would be his opinion upon the facts thus found true, on the question of soundness of mind.

3. We think the answer given by the judge to the question of the juror, in regard to a prior will said to have been executed by the testator, was strictly correct. It is stated, in the appellee's argument, that such former will had been read, and its contents, for some purpose, laid before the jury; but in the report it is merely said that it had been offered in evidence, without saying for what purpose, or whether it had been admitted or not. But, either way, it is immaterial to these issues; if this will were set aside, it was a remote contingency whether such prior will was the last will, whether it was made and executed under such circumstances that it could be duly proved and admitted to probate. The question asked by the juror— Whose would be the property if this will were disallowed?— could not be answered by the judge without assuming the truth of facts then impossible to be known; and we think the judge made the answer proper to be made in this case, that it was immaterial to this case and ought not to be considered by the jury.

4. We cannot perceive any inconsistency in the verdict, in finding affirmatively on the two issues, that the testator was of unsound mind, and that he executed his will under undue influence. Unsoundness of mind embraces every species of mental incapacity, from raging mania to that debility and extreme feebleness of mind which approaches near to and often degenerates into idiocy. Such feebleness of mind, or incipient idiocy, is the condition most likely to be unduly influenced by another. But even in the case of monomania and insane delusion a person by artful, false and repeated surmises and insinuations, operating upon a sensitive and excitable mind of another, may foster and exasperate, if not create, an insane delusion, and at the same time and by the same means obtain such an influence over him as to induce him to make a will, or do any other act, which he would not have done but for the existence of the insane delusion, and the undue influence concurring with it.

*Verdict confirmed, decree of probate court reversed, and probate of the will refused.*

The appellant moved for costs, on the ground that it had been found by the jury that the will had been executed through the undue influence of the appellee.

SHAW, C. J. There being a serious controversy, and the executor having offered the will, as he was bound to do, in the court below, and having followed it into this court on the appeal of the other party, no reason is shown for taking the case out of the general rule, which allows no costs in probate appeals.