(No. 25481.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES MATHESON *et al.*—(SAM TURRIANO, Plaintiff in Error.)

*Opinion filed February 21, 1940—Rehearing denied April 10, 1940.*

CHARLES R. AIKEN, (CHARLES HORWITZ, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and A. B. DENNIS, (EDWARD F. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On October 20, 1937, plaintiff in error, Sam Turriano, and James Matheson, otherwise called James Pogue, were indicted for the murder of Elmer Ostling, a Chicago police officer, on July 22, 1933. Matheson pleaded guilty and was sentenced to 199 years in the penitentiary. A jury in the criminal court of Cook county found Turriano guilty and fixed his punishment at imprisonment in the penitentiary for the same period. Motions for new trial and in arrest of judgment were overruled and he was sentenced. Turriano contends on this writ of error (1) that the court erred in the admission of evidence; (2) that the State's attorney was permitted too much latitude in his cross-examination of Turriano, and (3) that the evidence does not support the verdict.

Elmer Ostling and John Skopek, uniformed police officers, were killed when they stopped a DeSoto automobile which was being driven by Edgar Moorehead, since deceased, in the 2800-block on Washington boulevard in the city of Chicago. Turriano was riding at Moorehead's right and Matheson was on the rear seat. The officers were driv-

ing an automobile which had the word "Police" and the number "175" painted on each door. Officer Skopek went to the driver's side of the automobile which they had forced to the curb, and Ostling went around to the right side, and ordered Turriano to alight. Turriano complied, and as he was emerging from the automobile, Moorehead began shooting. Ostling pinned Turriano with both arms and used him as a shield and began to back away to a nearby tree. Matheson reached out of a rear window and fired a bullet that pierced Turriano's body above the heart. Ostling then dropped Turriano and received five bullet wounds from which he died shortly thereafter. A 38-caliber revolver of Spanish manufacture was found at the scene of the murder, but it was later thrown into Lake Michigan by the police department, before the murderers were apprehended. Neither of the two slugs found in Ostling's body could be traced by ballistic examination to this gun, which it is conceded was carried by Turriano on that night. It is not shown that Turriano fired any shots. He says he placed this gun, which had been given to him earlier in the evening by Moorehead, under the front seat of the automobile as soon as he saw that they were being stopped by the police, and that it must have been kicked out of the car. Matheson made a joint statement with Turriano in which he asserted that the latter had the gun in his right hand when he alighted from the car, but that he dropped it. This minor conflict in their joint testimony is unimportant. An expert in ballistics testified that one of the bullets found in the body of Ostling was fired from a gun which was identified as belonging to Moorehead, and the other from the gun identified as that of Matheson.

Turriano was identified by one witness, and freely made and signed statements in which he admitted being present at the scene, and these were received in evidence.

The wounded Turriano was dragged into the DeSoto by Moorehead and Matheson and taken to the two-room flat

of Sam Ciccione, where he received medical treatment. Later he was convicted of the robbery of a tavern and sentenced to the Pontiac reformatory, where he served two and one-half years.

The principal question of fact in this case is whether Turriano was engaged in a conspiracy with his companions to commit certain criminal acts, or whether he was engaged in an innocent mission and was an innocent bystander when the shooting began. The police officers were dead, and the People were entitled to prove what was the motive for the killing by showing that the three men were acquainted, that they had been engaged in other crimes and had a motive for resisting arrest or detention by officers of the law. Turriano admitted he knew he was riding in a stolen automobile that had stolen license plates on it, and that the three men had promised $20 to the custodian of that automobile for its use in the robbery of a beer distributor about 5:00 o'clock on the day of the murder. This robbery had been estimated to yield about $5000, but only $6 was obtained by Moorehead and Matheson, while Turriano waited in the car. The people called the owner of the DeSoto to prove that it had been stolen, and the owner of the plates that were on the DeSoto car to prove that his car and plates had likewise been stolen. Both cars were recovered within a few weeks. The cashier of the beer distributing firm was called to testify to the fact of the robbery on the day of the murder, and she identified Matheson as one of the robbers. Turriano was asked on cross-examination about the hold-up of a butcher shop earlier in 1933. He insisted that he was forced to take part through threats by Moorehead and Matheson to involve him in some automobile thefts he knew about. He had been employed in a garage and had become acquainted with a man named Harris, who was an automobile thief. He also insisted on cross-examination that he had been compelled to take part in the tavern robbery on threat of being exposed for his part in the murder of Ost-

ling. On direct examination, Turriano stated that Matheson and Moorehead came to his living quarters about 7:30 or 8:00 o'clock on the evening of the killing. He was asleep, and the girl with whom he was living did not want him to be aroused, but Moorehead did wake him and told him that his girl friend had received a threatening telephone call and that he wanted to go over and see what the argument was. After they left the house, Moorehead distributed guns to each of the three men from a package he had been carrying, and in a short time they were stopped by the police as stated before.

In the argument presented by counsel for plaintiff in error, it is admitted that the car and the license plates on it were stolen, and that Turriano was riding in the car with Matheson and Moorehead. It is contended that Turriano is not shown to have had knowledge that either the car or the plates had been stolen, but his signed statement shows that he knew the DeSoto was a "hot car," and that it was the same car he, Matheson and Moorehead used that evening when they robbed "a brewery." Before that they had obtained a "Plymouth DeSoto," removed the plates from it, and put them on the "hot car" they were using when the two police officers were killed. In view of these facts, it was not prejudicial error to admit in evidence the fact that a bystander gave the license number on a slip of paper to one of the officers who came up after the killings, or that, later, an officer saw the stolen plates on a stolen car, and upon checking the number in his book, found that it was on the car used by the men who had killed the officers and that the car was wanted by the Warren avenue police station. It was improper for the owner of the stolen license plates to testify that those plates were the ones on the DeSoto car at the time of the killing, because it was hearsay, but this testimony was not needed to prove any essential fact in this prosecution and was not prejudicial.

On direct examination, Turriano said Moorehead had given him a 38-caliber Spanish revolver after they left Turriano's home, and while they were on their way to the place where the officers were killed. He does not deny that he had such a pistol, but he objects to the testimony of officer Kehoe that John Love picked up such a gun after the shooting and gave it to him, and to the testimony that this Spanish gun was thrown into the lake about two years later. Whether this testimony was competent or incompetent is immaterial in view of Love's testimony that he found the gun there and Turriano's own testimony that he had such a gun.

It is objected that all the testimony Sam Ciccione gave as to conversations between himself, Moorehead and Matheson was prejudicial, and that the action of the court in striking that testimony and directing the jury to disregard it, did not remove the prejudice. All that testimony was not stricken and it should not have been. Ciccione testified to one conversation which took place in the presence of Turriano and the court only directed all testimony stricken as to conversations that took place out of Turriano's presence. While it is not shown, and perhaps could not be, that the two officers they killed had in mind some particular offense the three men had committed as the reason for stopping the stolen DeSoto, it does appear from the evidence that the last unlawful act Turriano and his companions had committed was a failure to observe a boulevard stop immediately before they were accosted by the officers.

It is contended that it was improper to admit testimony as to other crimes but this was answered by what was said in *People* v. *Durkin*, 330 Ill. 394, and *People* v. *Watkins*, 309 id. 318. Where the motive for the crime charged is the concealment of some other crime either by destroying the evidence of such other crime or by killing a witness who could testify relative to it, or by bribing or killing an

officer who is attempting to arrest the offender, the evidence of such motive is admissible, even if it does show the commission of a separate and extraneous crime. Counsel for Turriano argues that he did not fire the shots that killed the two officers; that he is not shown to have been engaged at the moment in a common, felonious enterprise with them; and that, at most, if guilty of anything, where it is not shown why the officers stopped these three men, Turriano would be guilty only of manslaughter if he was not, in fact, an innocent bystander. Very much the same argument met with short shrift in the *Durkin case, supra.* The People were within their rights in the case before us in showing the motive these men had to do all that they could to escape from the police officers.

The point that too great latitude was permitted the State's attorney in cross-examination of Turriano is not well taken. The trial court has a large discretion in the matter of cross-examination of the accused, and the facts brought out as to Turriano's acquaintance with automobile thieves who visited the garage where he had been employed, the circumstances of the Clark street tavern robbery, and what Turriano had testified to on his trial for that robbery, either tended to establish the fact that he, Moorehead and Matheson were banded together to rob, or showed that Turriano's testimony was not to be believed.

Enough has already been stated to indicate that the contention that Turriano was not proved guilty beyond a reasonable doubt hardly needs to be mentioned. We entertain no doubt of his guilt, after reading this record, and it is not necessary to detail the facts and circumstances at greater length. There is no substantial infringement of the rights of the accused shown here, and there is nothing that would justify remanding this cause for a new trial.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*