73 So.2d 694 (1954)
McVEIGH
v.
STATE.
Supreme Court of Florida. En Banc.
June 25, 1954.
*695 Zach H. Douglas and Al L. Schneider, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., Bart L. Cohen, Asst. Atty. Gen., and William A. Hallowes, III, State Atty., Jacksonville, for appellee.
TERRELL, Justice.
Appellant was tried and convicted for murder in the first degree, the victim of his assault being Robert Q. Tucker, a member of the police force of Jacksonville. The death penalty was imposed and he seeks relief from that judgment by appeal.
On motion of defendant seasonably made the Court placed the witnesses under the rule. By agreement of counsel the witness Blake McVeigh, father of defendant, and several police officers were excepted from the rule. Dr. M.C. Moore was not excepted so defendant moved that he be included in the exceptions. The denial of this motion is the basis for the first question urged for adjudication.
At the outset defendant interposed the defense of insanity. Dr. M.C. Moore was a psychiatrist summoned by defendant to establish his plea of insanity. As provided by Section 909.17 the court appointed Dr. W.H. McCullagh and Dr. J.G. Lyerly to examine defendant as to his sanity at the time the homicide was committed. Defendant's reasons for excluding Dr. Moore from the rules were that he wanted him to "sit in the court room and hear testimony in the case in which he was interested in the matter of forming and expressing his expert opinion as to the sanity or insanity of the defendant at the time of the commission of the alleged crime and subsequent thereto."
The settled rule in this state is that the matter of placing witnesses under or exempting them from the rules is one within the discretion of the trial court and his action will not be reversed unless it is made to appear that he abused his discretion and that such abuse worked to the prejudice of the party complaining. Robinson v. State, 80 Fla. 736, 87 So. 61; Atlantic Coast Line Railroad Co. v. Shouse, 83 Fla. 156, 91 So. 90; Woodbury v. Obear, 73 Mass. 467, 7 Gray, 467, 471; People v. Keough, 276 N.Y. 141, 11 N.E.2d 570; Wigmore on Evidence (3rd Ed.), Volume 1, Section 563; Volume 11, page 800; Thompson on Trials (2nd Ed.), Volume 1, Section 295; Wharton on Criminal Evidence *696 (10th Ed.), Volume 1, Section 418 and many others. Appellant contends that the crucial point in the case is his sanity, that otherwise there is no real controversy as to the facts, that Dr. Moore was an expert witness, that he will be questioned as to matters testified to by other witnesses, that he should have had the advantage of defendant's behavior before and after the homicide, and being so, he should have been exempted from the rule. He relies on Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L.R.A. 484; Porter v. State, 135 Ala. 51, 33 So. 694; Roberts v. State, 122 Ala. 47, 25 So. 238; State v. Privitt, 175 Mo. 207, 75 S.W. 457; State v. Spangler, 92 Wash. 636, 159 P. 810; State v. Hayden, 51 Vt. 296; Cornell v. State, 104 Wis. 527, 80 N.W. 745, to support this contention.
We have examined these cases and some of them support the contention that where the evidence is undisputed and there is no confusion or dispute as to facts proven, an expert witness who has heard all the evidence affecting the issue of insanity may be permitted to state his opinion on that evidence. These cases may be said to approve an exception to the general rule but some of them and many of the cases supporting the rule, point out that the overwhelming weight of authority supports the thesis that the matter is one in the discretion of the trial court. In this case Dr. Moore was retained and brought into court by defendant. Dr. McCullagh and Dr. Lyerly were appointed by the Court and all were placed under the rules. They were all expert psychiatrists and all testified as to the sanity of defendant at the time the homicide was said to have been committed. A careful examination of the record discloses no abuse of discretion on the part of the trial court.
The second question charged that the trial court committed error in permitting the state over seasonable objection, to introduce evidence proving or tending to prove the commission of other criminal acts by the defendant.
The second, as well as the third, and fourth, questions deal with a rule of criminal evidence that is well settled but has many exceptions. The challenged evidence was offered for the purpose of establishing motive. In summary it showed that when defendant was arrested he was speeding, that he was in possession of a recently stolen automobile, that he had no driver's license or title certificate, that he said he was a used car salesman and that he was registered with his wife and son at room 603 Mayflower Hotel, Jacksonville. It later developed that he registered under an assumed name. The policeman who arrested him proceeded to a nearby telephone to check on these statements and while doing so defendant fled. The officer chased him but lost track of him on account of another accident. He was shortly thereafter apprehended and arrested by other police officers for speeding in downtown Jacksonville. Soon after the second arrest traffic officer Robert Q. Tucker came up and took defendant in charge to deliver him to police headquarters. Tucker parked his motorcycle, got in the automobile with defendant and when they were within one block of the police station defendant shot Tucker three times, killing him instantly and throwing his body from the automobile. He again fled but was arrested.
The evidence objected to also revealed that defendant was at the time of the homicide, December 24, 1952, a probation violator from California and that the superior court of Los Angeles County, California had on December 1, 1952, revoked his probation and issued a bench warrant for his arrest. Under this state of facts it was perfectly apparent why defendant did not want to go to the police station where he would be confronted with his criminal history. Even though such evidence proved the commission of another and different crime, it was admissible to show motive. Tally v. State, 160 Fla. 593, 36 So.2d 201; Thomas v. State, 132 Fla. 78, 181 So. 337; Beard v. State, 131 Fla. 512, 180 So. 1; Smithie v. State, 88 Fla. 70, 101 So. 276; Smith v. State, 48 Fla. 307, 309, 37 So. 573; Ryan v. State, 83 Fla. 610, 92 So. 571; Short v. State, 53 Ariz. 185, 87 P.2d 266; People v. Matheson, 373 Ill. 374, *697 26 N.E.2d 465; Warren on Homicide, 26 American Jurisprudence, 40 C.J.S., Homicide, § 227, p. 1154; Wharton's Criminal Evidence and all the text books are to like effect.
Appellant contends that the evidence of Ray W. Borders and Sam D. Simpkins, Jr. was prejudicial, too remote, and should not have been admitted. It is true that the testimony of Borders had reference to incidents that took place two years before the homicide, but it had a direct bearing on defendant's attitude toward policemen in general. It had a direct relation to the motive or intention which precipitated the homicide and was admissible in evidence for that purpose.
Question five challenges that part of Section 917.02 F.S.A. relating to the appointment of experts to examine defendant, their examination by the court and counsel as being violative of the Bill of Rights, Constitution of Florida and the Fifth and Fourteenth Amendments to the Federal Constitution.
This question is bottomed on Article two of the State Constitution relative to the separation of powers and the prohibition against those holding office in one department exercising powers appertaining to another department. It is sufficient answer to this question to say that the burden was on the state to prove the defendant's guilt. The fact that the court is permitted to examine the witness, if he exercises the privilege, does not transgress the provision of the Constitution. It is done in the presence of counsel, the court is an umpire and his questions are propounded to clarify. They are not those of a prosecutor. In this case the issue of insanity was raised and the burden was on defendant to prove it. No substantive right of defendant is shown to have been violated.
The sixth question is related to the fifth in that it challenges the power of the court to require defendant to submit to examination by medical experts appointed under Section 917.02 F.S.A. and then questioning them by the court as to sanity of defendant.
The gist of the grievance in this question is directed to the last sentence of Section 917.02, as follows:
"The experts appointed by the court shall be summoned to testify at the trial and shall be examined by the court and may be examined by counsel for the state and the defendant."
It is contended that the quoted provision requires defendant to testify against himself, that it delegates executive powers to judicial officers, that it deprives defendant of due process and trial by jury. It appears that the court followed the statute literally in appointing the experts to examine defendant, that counsel for the state and defendant were present at every step in the cause and participated in the examination. People v. Dickerson, 164 Mich. 148, 129 N.E. 199, 33 L.R.A.,N.S., 917, is the only case holding an act similar to Section 917.02 unconstitutional. Other states have upheld the validity of such acts and have condemned the last cited case. Jessner v. State, 202 Wis. 184, 231 N.W. 634, 71 A.L.R. 1005; People v. Strong, 114 Cal. App. 522, 300 P. 84. See also Hunt v. State, 248 Ala. 217, 27 So.2d 186; Wigmore on Evidence (3rd Ed.), Vol. 1, Section 563, where a full discussion of the question will be found. What we said in answer to question five is equally applicable to answer the present question.
It is also contended that Section 917.02, Florida Statutes, is repugnant to Section 932.30, Florida Statutes. Section 917.02 relates to appointment of experts by the court to examine defendant in cases where insanity becomes an issue, while Section 932.30 relates to the testimony of an expert relevant to matters or things pertinent to the issue. Under 932.30 the court appoints the expert on motion of the state while 917.02 provides for the appointment of one or more neutral experts by the court on his own initiative. The statutes relate to different media and are in no sense repugnant.
At the hearing on the motion for rehearing it appears from the testimony of Carl T. Cherry, who was a prospective *698 juror, that Deputy Sheriff King intimated to said juror a desire to see defendant convicted. It is shown however that Carl T. Cherry did not serve on the jury. Other jurors and prospective jurors were served by Deputy King but there is no showing whatever that any of them heard the remarks that were said to have been made in the presence of Cherry. For all the record shows the jury that was finally selected was fair and impartial. The courts of this country have uniformly held that no harm is done if the acts complained of do not reach the jury. Young v. State, 85 Fla. 348, 96 So. 381; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. 393; Williams v. State, 36 Ala.App. 26, 58 So.2d 877.
It is last contended that the trial court committed error in refusing appellant a new trial on the ground of newly discovered evidence.
Such newly discovered evidence had reference to testimony given by detective Ray W. Borders in a proceeding in California in 1951 wherein defendant was charged with burglary. Examination shows that the proposed newly discovered evidence tends to show that Borders' testimony in the California case was inconsistent with his testimony given in the case at bar. It would at best go to impeachment of Borders' evidence in this case. It would not go to the merits of, nor would it be material to, the main issue in this case.
This court is committed to the rule that a new trial will not be granted for newly discovered evidence unless such evidence was discovered after the former trial, that due diligence must have been shown to have it at the former trial, that it must be material to the issue, it must go to the merits of the case, it must not be cumulative and it must be such as would produce a different verdict. The alleged newly discovered evidence falls far short of this test.
This is not the traditional homicide where the assailant waylays his victim and takes his life or engages him in controversy where words generate heat and the argument is concluded by death of the victim at the point of the assailant's gun. This is more comparable to the extreme case of juvenile gangsterism. In the short space of less than an hour appellant was thrice thwarted by the police force because of a compulsion to exceed the speed limit. The policemen did not treat him unkindly, they performed their legal duty in a very humane manner, but as he boiled inside, on account of having been thwarted for driver irrationality he deliberately drew a pistol from his person and slew the policeman. Three eminent psychiatrists said he was not insane. He must have been mentally disturbed, so much so that his moral impulse was dethroned but that does not afford him a release from murder under the guise of insanity. We are confronted with a pathetic irony of the criminal law. The police can catch them, the jails can restrain them, but that does not solve the stark problem that slaps us in the face  defendant is the product of a society that is turning out criminals at a hasty rate.
We find the judgment of conviction amply fortified by the law and the evidence. It is accordingly affirmed.
Affirmed.
ROBERTS, C.J., and THOMAS, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.