300 So.2d 323 (1974)
Ronald Ray O'BRYAN, Appellant,
v.
STATE of Florida, Appellee.
No. V-52.
District Court of Appeal of Florida, First District.
September 17, 1974.
Richard W. Ervin, III, Public Defender, David J. Busch and Ronald A. Mowrey, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
*324 McCORD, Judge.
This is an appeal from a conviction of first degree murder and a life sentence. Appellant contends the trial court erred in not granting his motion for a new trial based upon the ground that material new evidence was discovered which was not previously known to him. Appellant also contends that the motion for new trial should have been granted on the ground that the verdict was contrary to the law and/or the weight of the evidence.
The testimony at trial showed that the appellant, the deceased (Estelle Smith), appellant's uncle (Charles Turner), and the uncle's girlfriend (Elizabeth Rogers), were drinking socially at decedent's house in the early evening of September 1, 1973. Subsequently, all four persons went to a bar and drank for a period of time. After leaving the bar, the four went back to decedent's house. By this time, appellant was intoxicated and the decedent was making amorous advances toward him. Appellant's grandmother appeared at decedent's house, saw that appellant was drunk and attempted to get appellant to go home with her. Appellant refused and the decedent put her arms around him, kissed him and stated that "He is going to stay with me tonight" and the grandmother left. Later that evening, Turner and Rogers departed leaving appellant and decedent alone together. Approximately 1/2 hour later (around 10 p.m.) Turner and Rogers returned and met appellant in the street in front of a trailer located next to decedent's house. Appellant told them not to go in, that there had been a fight and that decedent had cut him. Turner went into the house, found decedent lying on the floor partially clothed and bloody but alive. He told appellant to leave the area and appellant did so.
Appellant made a confession which was taped and played to the jury. On the tape, appellant was fully warned of his constitutional rights before he made the confession and there is no question raised as to its voluntariness. In the confession he gave the graphic details of the episode. In brief, he said that he and the decedent went into the bedroom and engaged in sexual intercourse, but he could not reach a climax and began to get up and she grabbed him; that he then grabbed her and started choking her, hit her in the face, hit her with his elbow and then choked her and she started bleeding all over the face; that he rolled off the bed, got her off the bed and had her on the floor choking her and he then went in the front room and got an electrical cord and tried to choke her with the cord; that he then got his knife out of his pants pocket and started stabbing her with his knife. On being asked why he got his knife he answered, "Cause she wasn't dead. I don't know." On being asked how many times he stabbed her, he replied, "Probably about four, not more than ten, I don't think, five or five. I don't exactly remember."
Testimony at the trial was to the effect that analysis of a sample of appellant's blood showed him to have type "A" blood and that decedent had type "O" blood. Blood samples from articles of decedent's clothing were analyzed and were found to be of type "O". Blood samples taken from fingernail scrapings of decedent's hands revealed the presence of both type "O" and "A" blood. Blood grouping tests made on blood stains on the tip of a vaginal swab used on decedent revealed the presence of both type "A" and type "O" blood. Immediately following the conclusion of the trial, defense counsel, through inspection of appellant's National Guard record, his identification or "dog" tag and blood donor card determined that his blood group was "O" rather than "A". It does not appear in the record before us that the state made any objection to such evidence. For purposes of this appeal we will assume that appellant's blood type was "O".
To warrant granting of a new trial based on newly discovered evidence, it must appear that the new evidence was *325 discovered after the former trial, that due diligence was exercised to obtain and present it at the former trial, and that it is material to the issue. It must go to the merits of the case, must not be cumulative and must be such as would produce a different verdict. See McVeigh v. State, Fla., 73 So.2d 694, appeal dismissed 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696; and Clark v. State, Fla.App. 1st, 281 So.2d 915.
We do not consider there was lack of due diligence by defense counsel in failing to discover the evidence that appellant's blood was type "O" rather than type "A". A blood sample had been taken from appellant by order of the court on the state's motion and appellant had no reason to believe that the state's blood analysis was incorrect. However, we cannot conclude that the newly discovered evidence is such as will probably change the result if a new trial were granted. The fingernail scrapings and the vaginal swab from decedent showing both type "A" and type "O" blood grouping are not of such weight as to change the result if a new trial were granted. In view of the conclusive nature of appellant's confession and the other evidence in the case, this evidence would only show that decedent had contact with some third party at some time prior to her contact with appellant. In view of the overwhelming evidence of appellant's guilt contained in his confession, coupled with the circumstances in which appellant was left alone for a period of only 30 minutes with the decedent, the court did not err in denying the motion for new trial based on newly discovered evidence.
As to appellant's contention that the verdict is contrary to the law and/or the weight of the evidence, he argues that the evidence is insufficient to show premeditation, and thus, appellant, if guilty, was guilty at most of second degree murder. As we stated in Hernandez v. State, Fla.App. 1st, 273 So.2d 130:
"... Though premeditation involves a prior intention to do the act in question, it is not necessary that the intention be conceived for any particular period of time before the act. A moment before the act is sufficient. Premeditation may be inferred from evidence as to the nature of the weapon used, the manner in which the murder was committed and the nature and manner of the wounds inflicted."
Appellant's confession showed ample evidence of premeditation to support the jury's verdict. He was not satisfied with beating and choking her. After having done so he could have left the scene, but he only left the room and went into the next room to get an electric cord to choke her with. He then took his knife from his pocket and stabbed her numerous times. It is apparent that he determined in his mind that he was going to kill her. The evidence fully supports the jury's verdict.
Affirmed.
RAWLS, C.J., and JOHNSON, J., concur.