405 So.2d 213 (1981)
Dante DINO, Jr., Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1137.
District Court of Appeal of Florida, Third District.
October 13, 1981.
Rehearing Denied November 16, 1981.
*214 Bennett H. Brummer, Public Defender and Peter Raben, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
BASKIN, Judge.
Defendant challenges his conviction for first degree murder on the ground that the state failed to prove premeditation. Consequently, he urges us to reduce his conviction either to a lesser degree of homicide or to manslaughter. He also argues that the court erred in refusing to suppress his pretrial statement. He maintains this judicial error must result in reversal of his conviction. We disagree and affirm.
The events surrounding the shooting of Willie Knight signaled disaster. Defendant, a financial backer and coach for a neighborhood boys' baseball league, often invited the members of the team to his home after the games. His wife provided snacks and soft drinks for the boys. Willie Knight was one of defendant Dino's favorites and spent a great deal of time in the Dino home, accepted as part of the family.
During a baseball game earlier in the evening of the shooting, however, defendant took Willie Knight out of the game because he had been misbehaving. He told Willie Knight that he would "never see another baseball in his life." After the game, the team went to defendant Dino's house. Pizzas were ordered and the boys wiled away the time by examining defendant's unloaded guns. When Willie Knight rode up on his bicycle to join the group, defendant Dino pointed a gun at him; Willie Knight ignored the gesture and entered. Later, when another boy arrived at the house, defendant Dino pointed an empty .357 magnum at his head and jokingly accused him of being a burglar, remarking "you can get shot that way." While waiting for Mrs. Dino to return to the house with the pizza, Willie Knight stated that he was going to scare her. Dino told Willie Knight that he would kill him if he did. Knight disregarded the warning and hid, making a noise when Mrs. Dino arrived but failing to frighten her. Shortly thereafter, while everyone was laughing and having a good time, Mrs. Dino went into the kitchen to prepare the pizza. The boys continued to inspect the guns. Defendant Dino walked back into his bedroom and returned to the dining room with a .38 caliber pistol. He walked up to Willie Knight and pointed the pistol at the boy's temple. Without uttering a word, he fired a single shot at a distance of one to three inches from Willie Knight's head. After the shooting, defendant Dino shouted to his wife to call an ambulance. One witness testified that Dino said to the boys, "You did not see nothing", *215 but another witness denied the statement had been made.
When Opa Locka police officers arrived at the Dino home, Dino told Officer Love that while he had been showing the boys his unloaded magnum, Knight picked up a loaded .38, which discharged when he tried to take it away from Knight. It was this statement, later repeated to Detective Majors, which Dino unsuccessfully sought to suppress.
When Detective Majors arrived, Dino was speaking to his attorney on the telephone. The attorney asked Detective Majors to postpone questioning, but Detective Majors replied that delaying the interview would delay the investigation. He invited the attorney to accompany Dino to the police station, but the attorney did not wish to go to the station at that time. Detective Majors informed the attorney that defendant Dino was not a suspect and that if during the interview defendant Dino began to incriminate himself, he would halt the questioning and contact the attorney. Mr. and Mrs. Dino then went to the police station to answer questions.
Detective Majors began to interview Dino. Although Dino had consumed four or five valium tablets during the preceding two hours, Detective Majors felt that Dino was alert and sufficiently attentive to answer questions. During the questioning, defendant Dino repeated his statement that the loaded .38 discharged as he reached to take it from Willie Knight. Because defendant Dino appeared to become drowsy and inattentive, Detective Majors ended the interview and permitted him to return home.
In a pretrial Motion to Suppress, defendant Dino challenged the voluntariness of the statement he had made to Detective Majors asserting that at the time he made the statement he was disoriented by the valium and insane. He also maintained that he had been deprived of his right to counsel. The trial court denied the motion, finding that Dino was neither insane nor psychotic when he made the statement.
In order to find that defendant Dino shot Willie Knight with premeditation, we must determine whether, at the time of the killing, he had a settled and fixed purpose to take Willie Knight's life. McCutchen v. State, 96 So.2d 152 (Fla. 1957). Premeditation may be established by circumstantial evidence. Phippen v. State, 389 So.2d 991 (Fla. 1980); Tedder v. State, 322 So.2d 908 (Fla. 1975); Spinkellink v. State, 313 So.2d 666 (Fla. 1975); Perez v. State, 371 So.2d 714 (Fla. 2d DCA 1979).
While we cannot discern a motive for defendant Dino to have killed Willie Knight, lack of motive does not negate premeditation. Daniels v. State, 108 So.2d 755 (Fla. 1959).
An intent to kill need not be conceived at any particular time before the commission of the act for it to constitute premeditation. McCutchen v. State, supra; O'Bryan v. State, 300 So.2d 323 (Fla. 1st DCA 1974). Premeditation may be inferred from evidence of the nature of the weapon, the manner in which the homicide is committed, and the manner in which the wounds were inflicted. O'Bryan v. State, supra; Hernandez v. State, 273 So.2d 130 (Fla. 1st DCA), cert. denied, 277 So.2d 287 (Fla. 1973).
Eyewitness testimony disclosed that prior to the shooting Dino left the room, walked down a hall, returned with a .38 caliber weapon, and silently strode directly to the victim. From a distance of no more than three inches, he pointed the weapon at Willie Knight and fired.
The circumstances are inconsistent with any reasonable hypothesis of innocence as to the existence of premeditation. Hall v. State, 403 So.2d 1319 (Fla. 1981). Unlike the situation in Marasa v. State, 394 So.2d 544 (Fla. 5th DCA 1981), this record contains evidence that defendant's actions were designed to effect death. In arriving at our conclusion that evidence supports a verdict of premeditation, we do not consider defendant's earlier remarks which could reasonably be construed as having been made in jest. We refer to Dino's comments *216 that Willie Knight would never see another baseball and that he would be killed if he frightened Mrs. Dino.
Addressing defendant's challenge to the court's refusal to suppress his statement, we note that the trial court ruled that defendant was not insane or psychotic at the time he made the statement. Although the court failed to make a specific finding that the statement was made voluntarily, the court's ruling encompassed that finding. See Peterson v. State, 382 So.2d 701 (Fla. 1980); Finley v. State, 378 So.2d 842 (Fla. 1st DCA 1979). We find no error on the question of voluntariness.
We find no violation of constitutional rights in the officer's conducting an interview with defendant in the absence of his attorney under the circumstances presented. The attorney agreed that the interview could be conducted, and Detective Majors' promise that he would terminate the interview prior to receiving incriminating statements was not violated; Dino's statement was exculpatory.
For these reasons, we find no error and confirm the conviction and sentence.
DANIEL S. PEARSON, Judge, dissenting.
I fully recognize that there is no constitutional requirement that the trial court recite on the record that it finds a statement to be voluntary before admitting it in evidence. Peterson v. State, 382 So.2d 701 (Fla. 1980). See Antone v. State, 382 So.2d 1205 (Fla. 1980); Williams v. State, 397 So.2d 1044 (Fla. 4th DCA 1981). But while Peterson dispenses with formality, it does not and cannot alter, and indeed reiterates, the constitutional requirement of Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), that the record "disclose with unmistakable clarity that the trial judge found that the statement was voluntary." 382 So.2d at 702. Because this constitutional requirement was not met in the present case, I respectfully dissent.
Dino's motion to suppress was grounded, inter alia, on two distinct and separate contentions of involuntariness: first, that the statement was taken at a time when Dino was under the influence of drugs; and second, that the statement was taken at a time when Dino was insane.[1] Testimony was introduced at the suppression hearing in support of and against both contentions.[2]
An independent review of the record shows but a single dialogue to which one can refer in deciding whether the trial court understood and fulfilled its responsibility to determine the admission of the challenged evidence.
"THE COURT: Let me make a ruling on that motion to suppress too. Briefly the facts in support of the motion and ruling, Dr. Segete's first observation of the defendant, she attributed to his bizarre conduct to be consistent with severe drug withdrawal.

*217 "At first she notes he was not psychotic, but severely disturbed. She added that the thought of being in jail was very disturbing, and that the decompensation began to start in front of her eyes. "So with these types of observations by Dr. Segete, they add little as to the determination as to the defendant's competency at the time he made the statements, and these statements were, as I understand it, some eight to ten hours earlier, is that correct, from the evidence that he saw Dr. Segete or Dr. Segete saw him several hours after the statements were taken?
"[PROSECUTOR]: I don't think she saw him that first day Judge.
"[DEFENSE COUNSEL]: Yes. She saw him  he was in Jackson Memorial Hospital on February the 22nd.
"Of course, Your Honor, you must also remember the report of Dr. Reichenberg who told you on two occasions this man was insane.
"THE COURT: When did Dr. Segete see him in relation for the first time?
"[PROSECUTOR]: She said when he came into the jail.
... .
"[PROSECUTOR]: I think he was booked in on the 22nd.
"THE COURT: So this would have to be at least 12 hours later, at least 12. So, based on the observations of Detective Major and the conduct of the defendant described by his wife, it would be my finding that he was, at the time of making the statements, not insane or psychotic. I will deny the motion to suppress the statements." (emphasis supplied).
Thus, the record does show a finding that the defendant was not insane or psychotic when the statement was given. The majority's statement that this record finding encompasses a finding of voluntariness is correct to the extent it means voluntariness on the insanity issue. This type of record finding is, in my view, exactly what is contemplated by the "unmistakable clarity" test. See Daizi v. State, 396 So.2d 1160 (Fla. 3d DCA 1981) ("unmistakable clarity" test satisfied by record indication that the trial court gave credence to testimony which showed voluntariness). But the problem here is that while the record demonstrates with unmistakable clarity that the statement was voluntary in that the defendant was not insane when it was taken, it does not demonstrate with that same unmistakable clarity that the statement was voluntary in that the defendant was not drug intoxicated when it was taken. The finding that the defendant was not insane or psychotic simply does not "encompass" a finding that Dino was not drug intoxicated or a finding that the statement was voluntary in this latter sense. Indeed, the trial court, in rejecting the defendant's claim of insanity, and as a reason for such rejection, stated that Dr. Segete attributed the defendant's bizarre conduct some twelve hours after the statement "to be consistent with severe drug withdrawal."
The unmistakable clarity test is not satisfied by the trial court conducting a voluntariness hearing and announcing at the conclusion that the motion to suppress the statement or confession is denied. If mere hearing and denial were enough to show that the trial court understood and fulfilled its responsibility to determine the admission of the challenged evidence, there would be no reason for an unmistakable clarity test, and the rule of Peterson would simply be that the record must show that a hearing was held and the challenged evidence admitted. But that is not, and constitutionally cannot be, the Peterson rule. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which is binding in state court proceedings, requires a clear cut determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, it is constitutionally required that "his conclusion that the confession is voluntary ... appear from the record with unmistakable clarity." Sims v. Georgia, supra, 385 U.S. at 544, 87 S.Ct. at 643, 17 L.Ed.2d at 598. A search of the record in the present case reveals no conclusion of the trial court whatsoever, much less a conclusion which appears with unmistakable clarity, that Dino's statement was voluntary as against the challenge that it was given under the influence of drugs.
*218 Since I cannot say that the introduction of defendant's statement was harmless,[3] I would reverse and remand for a new trial to be preceded, if the defendant so requests, by a determination of whether the defendant's statement was involuntary because given under the influence of drugs.[4]
NOTES
[1] The defendant's "Motion to Suppress Statement Taken by Police" reads, in pertinent part:

"2. That prior [to the taking of the statement] the Defendant had informed Detective Major that he had taken a substantial number of Valium pills; that the questioning of the Defendant had to be discontinued because the Defendant became obviously affected by the aforesaid drug.
... .
"4. That the Defendant proffers to show that the Defendant was insane at the giving of the aforesaid statement."
That the defendant's will was affected by the ingestion of drugs is, of course, a basis for attacking the voluntariness of a confession. Knight v. State, 373 So.2d 52 (Fla. 4th DCA 1979). See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).
[2] On the issue of whether Dino was under the influence of drugs the defendant introduced evidence that, inter alia, (1) Dino's wife told the police he was in no condition to talk to them; (2) the police told Dino's wife to take away the Valium from Dino, "because he was taking so many"; (3) Dino's speech was slurred and incoherent; (4) Dino told Detective Major that he had taken twenty to twenty-five milligrams of Valium within the short time after the shooting; (5) Dino showed signs of being impaired by the drugs; and (6) Dino kept falling asleep during the interview by the police. What conclusion should have been drawn from this and counter evidence was a function of the trial judge, as fact-finder at the suppression hearing. My point is simply that some conclusion was required.
[3] The majority calls Dino's statement "exculpatory." According to Detective Major, Dino told him that when he returned from his bedroom Willie Knight was holding the loaded gun, and as Dino reached to take it away, it discharged. Because Dino's defense was insanity, the statement became highly incriminating. The psychiatrists called by the defense were compelled to admit that a rational "exculpatory" explanation within hours of the shooting pointed towards sanity. Moreover, the statement, shown to be false by the testimony of other witnesses, became an admission to show consciousness of guilt, see Brown v. State, 391 So.2d 729 (Fla. 3d DCA 1980). I do not, however, believe that because the statement later undermined Dino's insanity defense that Detective Major violated the agreement with defense counsel to cease the interview when the defendant "started to incriminate himself." By even consenting to allow his client to be interviewed, under the condition defense counsel imposed, he ran the risk of precisely what happened  an exculpatory statement which proves to be incriminating, and Major's testimony about the defendant's responsiveness and demeanor which undercut the insanity defense. I note that Dino's trial and appellate counsel did not represent him at the time he gave the statement to Detective Major.
[4] Under Swenson v. Stidham, 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972); Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964); and Jackson v. Denno, supra, Dino would only be entitled to a fair determination of whether his statement was voluntary in light of his claim that it was drug induced, not a new trial. If the statement were determined to be voluntary, the statement would have been properly admitted, and his conviction would stand; if determined to be involuntary, then a new trial will be required. However, under the combined holdings of Land v. State, 293 So.2d 704 (Fla. 1974), and Greene v. State, 351 So.2d 941 (Fla. 1977), a new trial is required where the trial court, although conducting a hearing, does not make a voluntariness determination in a case, as the present one, tried after Jackson v. Denno was decided. Compare, however, LaRoche v. Wainwright, 599 F.2d 722, 725 n. 2 (5th Cir.1979) ("Though there are policy reasons, as evidenced by the Florida rule, for granting a new trial when Denno error occurs well after the requisite standards have been made known, a contrary rule in a case like this certainly has no constitutional deficiency. There has been no lapse in due process if the statement is shown at some point to have been voluntarily made.").