559 So.2d 233 (1990)
Christopher McCALLUM, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2467.
District Court of Appeal of Florida, Fifth District.
February 15, 1990.
As Amended on Rehearing April 19, 1990.
James B. Gibson, Public Defender and James R. Wulchak, Chief, Appellate Division, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.
LEE, R.E., Jr., Associate Judge.
Appellant, Christopher McCallum, appeals his conviction and sentence for first degree attempted murder with a firearm. Appellant and a codefendant, Leonard Brooks, were convicted of the attempted murder of Juan Ward. Ward was first shot on June 9, 1988, at Gwen's Inn in Ocala, and taken to Monroe Regional Hospital. On the next night, around midnight, two black males entered Ward's room at the hospital and shot him twice before fleeing. This appeal is from appellant's conviction for the hospital shooting. We reverse.
Ward testified that he was lying in his darkened hospital room, resting with his eyes closed, when the first shot was fired. Being aroused by the report, he opened his eyes and saw his assailants, whom he later identified as appellant and Brooks.
Another hospital employee, Toni Howell, heard the gunshots and ran into the hall just in time to see two black men race by, turning briefly to face her. After the police arrived, Howell identified one of the men from a series of photographs, but unfortunately, the record fails to state which *234 of the men she identified. Later, at trial, she identified both appellant and Brooks as the two men she had seen in the hall.
Nanette Bradford, Ward's nurse, rushed into the room after hearing the shots. After Ward was stabilized, she asked him if he could identify the assailants. Ward nodded affirmatively and wrote "same." Bradford asked him if he meant the same people who had shot him the night before, and Ward nodded "yes." He then wrote "poli" and Bradford asked him if he meant that the police knew the identity of the previous assailants. Again Ward nodded "yes."
The owner of Gwen's Inn, Gwen King, testified that she saw appellant at her bar just after the first shooting on June 9th. Keith Escarvage, an Ocala police officer, arrived at Gwen's Inn shortly after the shooting and talked with the victim, Ward. When the officer asked Ward if he knew the assailant, Ward responded that Eric Dobson had shot him. David Parkins, another police officer, also spoke with Ward on the night of the Gwen's Inn shooting. When asked who had shot him, Ward answered that he had been shot by a man named "Dougie," later identified as Eric Dobson.
Appellant took the stand in his own defense and denied having shot Ward on either night. This story was verified by his girl friend, Charlotte McFatten, who stated that she was not with him on the night of the Gwen's Inn shooting, but that throughout the night of the hospital shooting appellant remained with her at her mother's house. McFatten's mother, Altamese Grant, testified that the couple had spent the night on her couch, from well before midnight (the time of the hospital shooting) until the next morning, when she woke the couple, telling them the TV news reported Juan Ward had been shot again the night before.
Having heard this and other testimony, the jury returned with a verdict finding appellant guilty of attempted first degree murder with a firearm. Appellant then filed a motion for a new trial, citing newly discovered evidence and providing the court with two affidavits in support of the motion; one from Charlotte McFatten, now married to appellant, and another from Edwin Washington. McFatten's affidavit includes an admission made to her by Eric Dobson around the time of the shooting in which Dobson informed her that he shot Ward at Gwen's Inn. Because of McFatten's relationship to appellant, her affidavit alone is insufficient to require a new trial.
Of more importance is Ed Washington's affidavit. Washington stated, among other things, that appellant was with him when Eric Dobson said he was going to teach Ward to respect him and fired a machine gun into the ground as Ward drove by. Washington's affidavit further asserts that he personally witnessed the attack on Ward at Gwen's Inn and appellant was not a participant. Even more relevant is Washington's statement that he ran into Leonard Brooks (appellant's codefendant) and James "Bo" Crosby after the unsuccessful attempt to murder Ward at Gwen's Inn, and listened to them brag that they were going to go to the hospital to "finish off the job." Moreover, Washington alleged appellant and Crosby strongly resemble each other and have been mistaken for brothers. Washington stated he did not come forward with this testimony earlier because he was afraid of Eric Dobson, Crosby, and a man known as "Snake." Appellant's trial counsel claims she did not learn of Washington's testimony until the day of appellant's conviction, when two public defenders advised her of Washington's information.
A new trial will not be granted for newly-discovered evidence unless:
1. Such evidence is discovered after the former trial;
2. It was not previously discoverable in the exercise of reasonable diligence;
3. It is material to the issue in question;
4. It goes to the merits of the case;
5. It is not cumulative;
6. As such, it would produce a different verdict.
*235 McVeigh v. State, 73 So.2d 694 (Fla. 1954), appeal dismissed, 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696 (1954); Taylor v. State, 522 So.2d 418 (Fla. 5th DCA), review denied, 531 So.2d 1355 (Fla. 1988); Dames v. State, 314 So.2d 171 (Fla. 3d DCA 1975). Furthermore, a motion for new trial based on new evidence is addressed to the sound discretion of the trial court and will only be disturbed on rare occasion. Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981); Taylor, supra.
The State does not refute Washington's testimony. There is no question that Washington's testimony is highly material to appellant's guilt or innocence in the hospital shooting. Nor is Washington's testimony cumulative of any other existing evidence. Thus, the question becomes, could appellant have secured this evidence prior to the trial, and does the failure to properly investigate Washington demonstrate a lack of due diligence?
In Jackson v. State, 416 So.2d 10 (Fla. 3d DCA 1982), the Third DCA reversed the denial of a motion for new trial:
It clearly appeared that the directly exculpatory testimony of two separate additional witnesses both would probably have changed the result of the trial, at which the evidence against Jackson, while legally sufficient, was highly dubious and uncertain. Fla.R.Crim.P. 3.600(a)(3); Jones v. State, 233 So.2d 432 (Fla. 3d DCA 1970) and, of less significance, was not previously discoverable in the exercise of reasonable diligence. See Webb v. State, 336 So.2d 416 (Fla. 2d DCA 1976), Jones v. State, supra. Even were the latter technically not the case, the due diligence requirement is not an inflexible one. Gaither v. Anderson, 103 Fla. 1190, 135 So. 840, 139 So. 587 (1932). On this record, we conclude that the achievement of the ends of justice  which is the paramount, indeed the exclusive interest which concerns us  requires that a jury hear the witnesses in question before the defendant may be convicted and imprisoned for the crime with which he is charged. Hence, that new trial must be afforded him. Jones v. State, supra; Hanson v. State, 187 So.2d 54 (Fla. 3d DCA 1966).
In the instant case, we find great similarities to Jackson. Washington's affidavit provides a very strong inference of appellant's innocence. Although it may be argued that defense counsel should have earlier pursued Washington as a lead, it is apparent from Washington's affidavit that he would have initially refused to speak for fear of retribution.
Because Washington's affidavit presents new evidence critical to a proper determination of appellant's guilt or innocence, we find that the trial court abused its discretion in denying appellant's motion for a new trial. Washington's knowledge was not learned of by defense counsel until after trial; it is not cumulative of any other evidence at trial, and, finally, it would have resulted in appellant's acquittal. Taylor, supra.
We reverse and remand for further proceedings consistent with this opinion. Accordingly, we take no position on the other questions raised.
REVERSED and REMANDED.
DAUKSCH and COBB, JJ., concur.