602 So.2d 1369 (1992)
Joseph CAMMARANO, Appellant,
v.
STATE of Florida, Appellee.
No. 92-759.
District Court of Appeal of Florida, Fifth District.
July 31, 1992.
*1370 Michael H. Tarkoff of Law Offices of Michael H. Tarkoff, Coconut Grove, and Law Offices of Irving Anolik, New York City, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca R. Wall, Asst. Atty. Gen., Daytona Beach, for appellee.
W. SHARP, Judge.
Cammarano appeals from the trial court's summary denial of his rule 3.850 motion for post-conviction relief.[1] The motion was filed more than two years after his conviction for two counts of first degree murder and armed robbery in 1985 and its basis was that the state's key witness, Potenzo (originally his codefendant), who testified against him at trial, recanted his testimony in 1991. The trial court ruled that the two-year limitation period[2] had run against Cammarano's motion and that he failed to establish reasons why Potenzo's retraction could not have been discovered within the two years, or raised in connection with Cammarano's prior rule 3.850 motion filed with this court in 1987. We disagree.
Recanted testimony is treated the same as a claim of newly discovered evidence when raised in a rule 3.850 motion. See Herrick v. State, 590 So.2d 1109 (Fla. 2d DCA 1991). A claim of newly discovered evidence is not time barred if such evidence could not have been ascertained earlier, with the exercise of due diligence. See Jones v. State, 591 So.2d 911 (Fla. 1991). Similarly, no abuse of procedure occurs in a case such as this by filing a second rule 3.850 motion, if the basis for the second motion could not have been reasonably discovered at the time the first was filed.
The record establishes in this case that Cammarano and Potenzo were charged with two counts of first degree murder and armed robbery, committed at a bar, in Orlando, in 1984. Prior to trial, Potenzo entered into a plea agreement and testified as the key witness against Cammarano. Cammarano was convicted and sentenced in 1985, to two concurrent life sentences.
In Cammarano's earlier rule 3.850 motion, he argued his defense counsel was ineffective because he failed to call as a defense witness a prisoner named Hinton Waters, who would have testified that Potenzo admitted to him he was solely responsible for the robbery and killings. Waters also would have said Potenzo told him he cooperated with the state to escape a possible death sentence, and to get even with Cammarano, who was maintaining his innocence at Potenzo's expense.
An evidentiary hearing was held. Defense counsel testified he decided not to call Waters at the trial because of credibility problems, and because he called another witness who offered similar testimony. The trial court denied the earlier rule 3.850 *1371 motion. This court affirmed.[3]
The current motion goes far beyond the first. It alleges that Potenzo only recently came forward and recanted his trial testimony. Early in 1991, Potenzo agreed to be interviewed by representatives of Cammarano's attorneys. He now publicly admits it was solely his own idea to rob the bar and to commit the murders. He claims he did so without Cammarano's knowledge or assistance. His motivation to lie was to escape the electric chair and was because of personal animosity against Cammarano. An affidavit executed by Potenzo establishing such facts is attached to Cammarano's motion.
The trial court discounted Potenzo's affidavit because Potenzo had already pled guilty and been sentenced to life imprisonment when he testified against Cammarano in 1985. However, the offer of the plea bargain by the state to Potenzo may well have been based on Potenzo's agreement to turn state's evidence against Cammarano.
The recantation of testimony by a key prosecution witness may require a new trial, where there is no other strong evidence of a defendant's guilt, and where the court determines the verdict likely would have been different, had the witness either not testified or had the testimony at trial been as now recanted. See Jones v. State, 591 So.2d 911 (Fla. 1991); Glendening v. State, 604 So.2d 839 (Fla. 2d DCA 1992); Herrick v. State, 590 So.2d 1109 (Fla. 2d DCA 1991). See also Collins v. State, 423 So.2d 516, 518 (Fla. 5th DCA 1982).
Based on this record, we think the trial court should conduct an evidentiary hearing to make these determinations. At this hearing, it will be Cammarano's burden to show why this recantation could not have been uncovered earlier, through the exercise of due diligence. Cf. State v. M.H., 571 So.2d 562 (Fla. 5th DCA 1990). On the face of the current motion, however, we are satisfied with Cammarano's allegations that Potenzo only recently decided to change his testimony. Without Potenzo's cooperation, any prior interviews with him would not have brought forth his recantation, however diligently his interviewer questioned him. Cf. McCallum v. State, 559 So.2d 233 (Fla. 5th DCA 1990).
Further, we do not think Potenzo's possible fabrication of testimony at trial should be foreclosed at this point from consideration via this rule 3.850 motion, merely because it was alluded to at trial by another witness, or by his prior rule 3.850 motion involving a jailhouse confession told to a fellow prisoner. Such admissions or confessions are fraught with credibility problems. They are mere chaff in the wind by comparison to the key witness, himself, now recanting the testimony. Based on the face of this record, it appears likely Potenzo's trial testimony was crucial in obtaining Cammarano's convictions.
REVERSED and REMANDED.
HARRIS, J., concurs specially with opinion.
COBB, J., dissents with opinion.
HARRIS, Judge, concurring specially:
While I agree that the trial court erred in refusing to consider Cammarano's 3.850 motion because of the two year time limitation, I do not agree that an evidentiary hearing is necessarily required.
If the court should conclude, based on a review of the record, that Potenzo's recantation as evidenced by the affidavit is not credible, then the motion for new trial should be denied. Feagans v. State, 487 So.2d 408 (Fla. 3d DCA 1986). In this case Potenzo's testimony at trial was that he and Cammarano decided to rob the bar and kill anyone present. To insure that the car (Cammarano's car) would not be seen at the bar, Cammarano parked his car some blocks from the bar and they walked back to the bar to do the robbery. Their pretence to gain entry to the bar was to do plumbing work.[1] Cammarano carried a *1372 blue bag (his) containing a screw driver and crow bar to the bar. The screwdriver and crow bar were to be used to open the bottom drawer of the safe.[2] The blue bag was to be used to carry the money away from the premises. Cammarano and Potenzo were planning to leave for Ft. Lauderdale immediately after the robbery. Potenzo shot both victims, and he and Cammarano loaded the money into the blue bag and fled the scene.
Cammarano's testimony was that they actually went to the bar to do plumbing work and that without warning Potenzo shot the owners of the bar.[3] He (Cammarano) ran out of the bar, in shock, about ten seconds before Potenzo. Potenzo was presumably packing the cash into the blue bag during this period. At some point on the way back to the car, which was parked some distance from the bar because either it had run out of gas or was having engine trouble, Potenzo threw the blue bag to Cammarano who caught it by instinct.
Potenzo, by affidavit, now claims that he alone planned and committed the robbery and murder without the knowledge or assistance of Cammarano. The trial court must compare his present position, his previous testimony and the independent evidence previously presented to determine if his recantation is credible.
The independent evidence includes one witness who observed them leaving the bar "at the same time ... as close together as you could be and not run into each other." They were stopped before they got to the car with Potenzo carrying the gun (Cammarano's) and Cammarano carrying the blue bag with the money. The car contained about eight gallons of gas and a test drive revealed no evidence of engine trouble. Cammarano's packed suitcase was found in the trunk of the car with his clothes and with the gun cleaning kit and extra ammunition for the gun. Cammarano was unable to explain, if they were at the bar to do plumbing, what happened to his plumbing tools and the plumbing material to do the job.
If the court believes the recanted testimony, before a new trial is granted the court must also believe that the changed testimony would probably result in a different verdict in the new trial. Mitchell v. State, 493 So.2d 1058 (Fla. 1st DCA 1986). This can only be determined from a complete review of the previous trial. I have not attempted to summarize the entire testimony presented at trial. The State presented some twenty six witnesses and the defense presented seven. The summary given is merely to show that the record is extensive and may be sufficient for the court to make its decision without an evidentiary hearing.
COBB, Judge, dissenting.
I would affirm based on the Tipsy Coachman Rule. See, e.g., Carraway v. Armour, 156 So.2d 494 (Fla. 1963); Taylor v. Orlando Clinic, 555 So.2d 876 (Fla. 5th DCA 1989), rev. denied, 567 So.2d 435 (Fla. 1990). As shown by the facts outlined in Judge Harris's opinion, the instant 3.850 motion is patently frivolous and this case should be put out of its misery.
NOTES
[1] Fla.R.Crim.P. 3.850.
[2] Fla.R.Crim.P. 3.850.
[3] Cammarano v. State, 548 So.2d 671 (Fla. 5th DCA 1989).
[1] This was a morning robbery and the bar was closed so that the owners could count the previous evening's receipts.
[2] Cammarano worked as a plumber for the bar and was familiar with the safe.
[3] Cammarano admitted that Potenzo did say something about robbing the bar the previous evening but he paid no attention to it.