# Supreme Court of Florida

————————

No. SC14-2347

————————

**LENNART S. KOO,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[February 11, 2016]

PERRY, J.

Lennart Koo seeks review of the decision of the First District Court of

Appeal in Koo v. State, 149 So. 3d 693 (Fla. 1st DCA 2014), on the ground that it

expressly and directly conflicts with a decision of another district court of appeal

and this Court on a question of law. We have jurisdiction. See art. V, § 3(b)(3),

Fla. Const.

## FACTS

Koo was convicted of burglary with a firearm after he removed a BB gun, an

AK-47, a .22 caliber rifle, a .38 pistol, and a .44 Magnum revolver from Dr.

Mohammed Saleh's storage unit. Koo later returned the .38 pistol, the AK-47, and

the .44 Magnum revolver. Dr. Saleh testified at trial that Koo did not have permission to enter the storage unit without him.

After Koo's trial, but before his sentencing, Dr. Saleh wrote a letter to the trial court purporting to add context to the incident and provide a possible motive for Koo's action. Koo filed a motion for new trial arguing that the letter qualified as newly discovered evidence. The trial court conducted a hearing and then denied the motion, finding that the letter did not qualify as newly discovered evidence because nothing in the letter was a recantation of Dr. Saleh's trial testimony. Koo received a minimum mandatory sentence of ten years.

Koo appealed to the First District Court of Appeal which affirmed the trial court's order stating, "any evidence in the victim's letter was known to the parties, and as such . . . did not qualify as newly discovered evidence." Koo, 149 So. 3d at 695. Furthermore, the First District held that the letter was not material because it did not contain evidence that disproved one of the elements of burglary with a firearm. Id. Koo moved for rehearing and rehearing en banc, which the district court denied, stating "our decision is consistent with any existing precedent[,]" because "[t]he letter does not contradict the victim's trial testimony, and it does not provide any information that would tend to rebut any of the elements of the convicted crime." Koo v. State, 162 So. 3d 156, 157 (Fla. 1st DCA 2015).

## DISCUSSION

The issue in this case is whether the trial court abused its discretion by finding that a post-trial, pre-sentencing letter written by the victim, purporting to offer a possible explanation for the defendant's actions, did not constitute a recantation and denying the defendant's motion for a new trial without an evidentiary hearing to determine the letter's credibility. Because the letter did not recant any material trial testimony, meaning that no evidence supporting any element of the crime was undermined by the statements in the letter, the trial court correctly denied the motion for new trial without holding an evidentiary hearing. However, the trial court improperly found that the letter could not constitute newly discovered evidence because the information was known to the defendant at trial.

A motion for new trial may be granted if "[n]ew and material evidence, which, if introduced at the trial would probably have changed the verdict . . . , and which the defendant could not with reasonable diligence have discovered and produced at the trial, has been discovered." Boyd v. State, 910 So. 2d 167, 178 (Fla. 2005) (quoting Fla. R. Crim. P. 3.600(a)(3)). If a witness recants trial testimony, that may be considered newly discovered evidence. See, e.g., Stephens v. State, 829 So. 2d 945, 945-46 (Fla. 1st DCA 2002). "[A] recantation is not precluded from being considered newly discovered evidence simply because the defendant knew, as reflected by what the defendant claimed the facts to be, that the

recanting witness was not telling the truth at the time of the trial or because the defendant took the stand to testify contrary to the witness." Archer v. State, 934 So. 2d 1187, 1994 (Fla. 2006).

Based on this standard, if the information in Dr. Saleh's letter had constituted a recantation of his trial testimony, the trial court should have held an evidentiary hearing, even if Koo knew that Dr. Saleh's trial testimony was false. However, the lower court correctly determined that the information in Dr. Saleh's letter did not constitute a recantation of his trial testimony. Instead, Dr. Saleh gives equivocal explanations for Koo's actions. Although Koo's defense at trial was that he felt it was necessary to take Dr. Saleh's weapons to protect himself, and argues that Dr. Saleh's letter supports this theory of defense, no such statement is made in the letter.

Dr. Saleh's testimony at trial was brief. The entirety of his testimony on direct examination was as follows:

> Q: Last November did you have a storage unit at the Atlantic Boulevard U-Haul storage unit?
> A: I did.
> Q: And what did you put in that storage unit?
> A: I had a lot of clothing. Before, your Honor, for quite a while, I had some clothing and merchandise that I ordered from China.
> Q: Did you put guns in that storage unit?
> A: Yes, sir.
> Q: On November 14th, did you and the defendant, Mr. Lennart Koo, put guns in that storage unit?
> A: You know I love you, man, but I have to go with the truth.

- 4 -

. . . .

Q: Last November 14th?

A: Yes, sir.

Q: Was Mr. Koo allowed to go in that storage unit without you?

A: No, sir.

Q: And did Mr. Koo take guns out of that storage unit?

A: Yes, sir.

. . . .

Q: Dr. Saleh, is this an AK-47?

A: Yes, sir.

Q: Is this your AK-47?

A: I believe it is.

Q: Is this the AK-47 that was in the storage unit?

A: Yeah, I remember the scratch on it.

On cross-examination, Dr. Saleh testified that he had known Koo for approximately five years, and that Koo had worked for him for the last two to three years, "off and on." Dr. Saleh testified that he was notified on November 15, 2011, that his storage unit was missing a lock but did not visit the unit until January 7, 2012. Dr. Saleh testified that he received a phone call from Koo's mother on November 16, and met with her and Koo on November 17 where Koo returned the AK-47 and a handgun.

Q: In fact, Mr. Koo, as your employee, had the authority to go to these different properties, which you owned, correct?

A: No. He may – I may send him on an errand, but nobody gave him the permission to go to the room, break in and steal my gun.

Q: And, in fact, you actually provided Mr. Koo with keys to all of these properties that you owned?

A: No.

Q: He had a keyring which had keys to your vehicles?

A: No. He stole keys, stole a lot of things. No, we didn't trust him very much.

. . . .

    Q: So even though you allegedly knew that this person had stolen a keyring to properties you owned you kept him as an employee?

    A: He was not an employee. He was doing some independent contract[ing], if you wish, but he was not formally employed. We were trying to help him out.

In his letter to the trial judge after Koo was convicted and before he was sentenced, Dr. Saleh wrote that Koo "had keys to every dwelling" and could have taken something more valuable. Koo argues that this is a recantation of Dr. Saleh's trial testimony that Koo did not have access to all of Dr. Saleh's properties. However, this statement does not contradict Dr. Saleh's testimony that Koo had stolen a keyring. His acknowledgment in his letter that Koo had keys to his dwellings is not materially different from his testimony at trial because neither Dr. Saleh's letter nor trial testimony stated that Koo had authority to have those keys. Nothing else in Dr. Saleh's letter can be characterized as contradicting or contrasting any of this testimony at trial. For example, his statement in the letter, "I miss [Koo] very much and I am devastated that he was convicted to serve a minimum ten years in prison. He does not deserve that . . . ." is consistent with his testimony at trial that he loved Koo like a brother, but was compelled to tell the truth. Dr. Saleh's post-trial letter appears to be an attempt to provide an explanation for Koo's actions, but is consistent with his trial testimony:

I suddenly remembered that [Koo's] "intent" may have been motivated by something more benign than what has transpired during

the trial . . . . The only explanation for [Koo] to remove the guns from the storage room, may have been his desire to protect me from my own self. I believe he may have felt that leaving the guns in the storage room was not enough, because I could still have had access to them. Of course, I would never harm my wife or anybody else . . . .

Dr. Saleh does not state in the letter that Koo had permission to enter the storage unit, that Koo was asked to move the guns, or that he had given Koo a reason to feel imminent danger.

In <u>Archer</u>, we explained:

> It is correct that not all recantations will be considered newly discovered evidence. <u>See, e.g.</u>, <u>Jones v. State</u>, 678 So. 2d 309, 313 (Fla. 1996) (finding defendant's reliance on Court's traditional treatment of recantations as newly discovered evidence misplaced because defendant's situation was not the typical case where a witness suddenly recanted his or her trial testimony years after the fact). A recantation will not be considered newly discovered evidence where the recantation offers nothing new or where the recantation is offered by an untrustworthy individual who gave inconsistent statements all along. <u>Jones</u>, 678 So. 2d at 312-13 (finding that recantation "simply offers nothing new" because the witness had already been impeached at trial with a prior sworn statement which was consistent with the recantation); <u>Walton v. State</u>, 847 So. 2d 438, 454-55 (Fla. 2003) (finding that recantation was "simply a new version of the events from a witness/participant who has presented multiple stories since the time of the occurrence of the events themselves"); <u>Smith v. State</u>, 400 So. 2d 956 (Fla. 1981) (finding that recantation testimony was cumulative to the evidence introduced at trial because both court and counsel were aware that prior to trial the recanting witness had confessed to the crime and said that defendant was not involved).
> However, in this case, the postconviction court erred when it rejected the claim based on what the postconviction court concluded was Archer's knowledge of Bonifay's testimony at the time of the trial. We find that a recantation is not precluded from being considered newly discovered evidence simply because the defendant knew, as reflected by what the defendant claimed the facts to be, that

the recanting witness was not telling the truth at the time of the trial or because the defendant took the stand to testify contrary to the witness. See Burns v. State, 858 So. 2d 1229 (Fla. 1st DCA 2003); Lee v. State, 677 So. 2d 312 (Fla. 1st DCA 1996). The appropriate question was whether Archer was or should have been aware of the existence of evidence that would demonstrate that Bonifay's testimony was false.

Archer, 934 So. 2d at 1194. In addition to other claims, Archer claimed that a witness against him had recanted his trial testimony. The trial court held that the recantation was not newly discovered evidence because Archer knew at the time of trial that Bonifay was lying. We affirmed, but rejected the postconviction court's rationale. Nevertheless, we agreed with the postconviction court's determination that Bonifay's testimony was not credible. Id. at 1196 (noting that recantations are "exceedingly unreliable") (citing Armstrong v. State, 642 So. 2d 730, 735 (Fla. 1994); Johnson v. State, 769 So. 2d 990, 998 (Fla. 2000)).

Likewise, in the instant case, the trial court and First District improperly determined that Dr. Saleh's letter did not qualify as newly discovered evidence because "any evidence in the victim's letter was known to the parties. . . ." Koo, 149 So. 3d at 695. However, unlike Archer, there was no recantation to consider and both courts correctly determined that the unsworn letter did not qualify as newly discovered evidence because nothing in the letter recanted Dr. Saleh's trial testimony. "As stated by Judge Roberts, the unsworn letter by the victim did not

- 8 -

involve a recantation." Koo, 149 So. 3d at 696 (Wolf, J., concurring). Thus, there was "nothing new" offered by the letter.

For the foregoing reasons, we hold that the trial court did not abuse its discretion in denying Koo's motion for a new trial without an evidentiary hearing although the trial court and First District misstated the appropriate standard for determining whether a recantation constitutes newly discovered evidence.

We decline to reach Koo's second issue on appeal because it was "not properly preserved for appellate review and [does] not constitute fundamental error." Wright v. State, 19 So. 3d 277, 295-96 (Fla. 2009).

For the foregoing reasons, we affirm the result of the First District Court of Appeal, but quash the portion of the decision that states "any evidence in the victim's letter was known to the parties, and as such . . . did not qualify as newly discovered evidence," Koo, 149 So. 3d at 695, because this is an incorrect statement of law.

It is so ordered.

LABARGA, C.J., and LEWIS and QUINCE, JJ., concur.
CANADY and POLSTON, JJ., concur in result.
PARIENTE, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring in part and dissenting in part.

I concur in the majority's decision explaining that the letter from Dr. Saleh, the victim in this case, did constitute newly discovered evidence. I dissent to the extent that the majority denies that the defendant is entitled to an evidentiary hearing regarding Dr. Saleh's recantation because—according to the majority— "the letter did not recant any material trial testimony." Majority op. at 3.

The majority's statement that an evidentiary hearing is not required because "the letter did not recant any material trial testimony" is overly broad and ignores the reality that the statements in the letter could constitute impeachment of the key prosecution witness. See Brooks v. State, 175 So. 3d 205, 231 (Fla. 2015) (evaluating weight of newly discovered evidence includes factoring whether it constitutes impeachment or goes to the merits of the case).

Only when the recantation is "inherently incredible or obviously immaterial to the verdict and sentence" is an evidentiary hearing not required. Davis v. State, 26 So. 3d 519, 526 (Fla. 2009) (emphasis added). In fact, in Stephens v. State, 829 So. 2d 945, 946 (Fla. 1st DCA 2002), the First District recognized and properly applied the "inherently incredible or obviously immaterial" standard in remanding for an evidentiary hearing to consider a state witness's affidavit.

Evidentiary hearings are of critical importance. As this Court recognized in McLin v. State, 827 So. 2d 948, 954-57 (Fla. 2002), only through evidentiary

- 10 -

hearings can the credibility of the witness's testimony be evaluated. See also Nordelo v. State, 93 So. 3d 178, 185 (Fla. 2012) (finding witness's recantation, unless inherently incredible or obviously immaterial to verdict, requires evidentiary hearing); Harris v. State, 128 So. 3d 44, 46 (Fla. 3d DCA 2012) (requiring evidentiary hearing to resolve claims of newly discovered evidence, especially when resolution of those claims necessarily requires the trial court to make credibility determinations); Cammarano v. State, 602 So. 2d 1369, 1371 (Fla. 5th DCA 1992) (determining that recantation of testimony by key prosecution witness requires evidentiary hearing to determine whether verdict likely would have been different had witness either not testified or had the testimony at trial been recanted).

The majority additionally fails to acknowledge that a recantation can be material even if it would only impeach a witness's testimony. In this case, Dr. Saleh was the key prosecution witness. At trial, although he stated that he loved Koo as a brother, Dr. Saleh depicted Koo as not even an employee, but rather an "independent contractor," in contrast to Koo's testimony that he was Dr. Saleh's "right hand man," with whom he shared a close relationship.

The post-trial letter contains admissions that were not part of his trial testimony that the jury heard: Dr. Saleh writes that he "suddenly remembered" that Koo's intent "may have been motivated by something more benign than what []

- 11 -

transpired during the trial," because he spent long hours talking and venting his frustrations with Koo and "told [Koo] to make sure I did not do something that I might regret." In contrast, at trial, what the jury heard from Dr. Saleh was that "we didn't trust [Koo] very much," and that "nobody gave [Koo] the permission to go to the room, break in and steal my gun."

The statements made in the post-trial letter speak directly to Koo's consent defense and the intent element. Based primarily on Dr. Saleh's trial testimony, the jury convicted the defendant of burglary with a firearm that triggered a mandatory ten-year sentence. As Judge Makar states in dissent: "The jury could not have convicted Koo without Dr. Saleh's testimony, which it apparently found credible." Koo v. State, 149 So. 3d 693, 698 (Fla. 1st DCA 2014) (Makar, J., dissenting). As Judge Makar further elaborates:

> Dr. Saleh's recantation letter may be credible, at least as to the portions related to Koo's consent and necessity defenses, which are material to the verdict. Under these circumstances, when the State's star witness recants a material portion of his testimony that goes to two key defenses in an exceptionally close case in which the jury expressed reservations (if not remorse) about its verdict—beseeching the trial judge to be lenient on the defendant—it was an abuse of discretion not to at least hold a hearing on the matter. Koo's request for a hearing is an exceptionally modest one given his liberty interest is at stake; his freedom for the next ten years has been taken away based on the disavowed testimony of Dr. Saleh, a person that even the trial judge had difficulty believing. A remand for an evidentiary hearing under Stephens is necessitated; whether a new trial is warranted would depend upon the results of that hearing. Koo is entitled to this minimal degree of due process before the State can take away a decade of his life.

- 12 -

Id. at 698-99 (emphasis added) (internal citation omitted).

I agree with the reasoning in Judge Makar's dissent. Impeachment of the key prosecution witness, Dr. Saleh, could have been the difference between a conviction and a not guilty verdict. The sole basis for the conviction is the testimony of Dr. Saleh, the main accuser, and his credibility is key. Whether his letter would show that he simply suffers from "buyer's remorse" or that it would materially impeach his credibility is a matter that should have been heard at an evidentiary hearing. If the victim testifies at an evidentiary hearing, his credibility can be evaluated so that a factual determination can be made of the materiality of his new testimony in light of his prior testimony. Because Dr. Saleh's letter was not "inherently incredible or obviously immaterial to the verdict," an evidentiary hearing should have been held in this case.

Accordingly, I would remand for an evidentiary hearing on the issues raised by Dr. Saleh's statements.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

    First District - Case No. 1D12-4866

    (Duval County)

Daniel Gray Thomas of the Law Office of D. Gray Thomas, P.A., Jacksonville, Florida,

    for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Matthew V. Pavese, Assistant Attorney General, Tallahassee, Florida,

for Respondent