PARIENTE, J.,
concurring in part and dissenting in part.
I concur in the majority’s decision explaining that the letter from Dr. Saleh, the victim in this case, did constitute newly discovered evidence. I dissent to the extent that the majority denies that the defendant is entitled to an evidentiary hearing regarding Dr. Saleh’s recantation because — according to the. majority — “the letter did not recant any material trial testimony.” Majority op. at 1102.
The majority’s statement that an eviden-tiary hearing is not required because “the letter did not recant any-, material trial testimony” is overly broad and ignores the reality that the statements' in the letter could constitute impeachment of the key prosecution witness. See Brooks v. State, 175 So.3d 204, 231 (Fla.2015) (evaluating weight' of newly discovered evidence includes factoring whether it constitutes impeachment or goes to the merits of the case).
Only when the recantation is “inherently incredible or obviously immaterial to the verdict and sentence” is an evidentiary hearing not required. Davis v. State, 26 So.3d 519, 526 (Fla.2009) (emphasis added). In fact, -in Stephens v. State, 829 So.2d 945, 946 (Fla. 1st DCA 2002), the First District recognized and properly applied the “inherently incredible or obviously immaterial” standard in remanding for an evidentiary hearing to consider a state witness’s affidavit.
Evidentiary hearings are: of critical importance. As this Court recognized in McLin v. State, 827 So.2d 948, 954-57 (Fla.2002), only through evidentiary hearings can the credibility of the witness’s testimony be evaluated. See also Nordelo v. State, 93 So.3d 178, 185 (Fla.2012) (finding witness’s recantation, unless inherently incredible or obviously immaterial to verdict, requires evidentiary hearing); Harris v. State, 128 So. 3d 44, 46 (Fla. 3d DCA 2012) (requiring evidentiary hearing to resolve claims of newly discovered evidence, especially when resolution of those claims necessarily requires the trial court to make credibility determinations); Cammarano v. State, 602 So.2d 1369, 1371 (Fla. 5th DCA 1992) (determining that recantation of testimony by key prosecution witness requires evidentiary hearing -to determine whether verdict likely would have been different had witness either not testified or had the testimony at trial' been recanted).
The majority additionally fails to acknowledge that a recantation can be material even if it would only impeach a witness’s testimony. In this case, Dr. Saleh was the key prosecution witness. At trial, although he stated that he loved Koo as a brother, Dr. .Saleh depicted Koo as not even an employee, but rather an “independent contractor,” in contrast to Koo’s testimony that he was Dr. Saleh’s “right hand man,” with whom he shared a close relationship.
The post-trial letter contains admissions that were not part of his trial testimony that the jury heard: Dr. Saleh writes that he “suddenly remembered” that Koo’s intent “may have, been motivated by something more benign than what [ ] transpired during the trial,” because he spent long hours talking, and venting his frustrations with Koo and “told [Koo] to make sure I did not do something that I might regret.” In contrast, at trial, what the jury heard from Dr. Saleh was that “we didn’t trust [Koo] very much,” and that “nobody gave [Koo]: the permission to go to the room, break in and steal my gun.” ,
*1107 The statements made in the post-trial letter speak directly to Koo’s consent defense and the intent element. Based primarily on Dr. Saleh’s trial testimony, the jury convicted the defendant - of burglary with a firearm that triggered a mandatory ten-year sentence. As Judge Makar states in dissent: “The jury could not have convicted Koo without Dr. Saleh’s testimony, which it apparently found credible.” Koo v. State, 149 So.3d 693, 698 (Fla. 1st DCA 2014) (Makar, J., dissenting). As-Judge Makar further elaborates:
Dr. Saleh’s recantation letter may be credible, at least as to the portions related to Koo’s consent and necessity 'defenses, which aré material to the verdict. Under these circumstances, when the State’s star witness recants a material portion of his testimony that goes to two' key defenses in an exceptionally close case in which-the jury expressed'reservations (if -not remorse) about its -verdict — beseeching’ the trial judge ‘ to be lenient on the defendant — it was an abuse of discretion not to at least hold a hearing on the matter. Koo’s request' for a hearing is an exceptionally modest one given his liberty interest is at stake; his. freedom for the next ten years has been taken away based on the disavowed testimony of Dr. Saleh, a person that even the trial judge had difficulty believing. A remand for an evidentiary hearing under Stephens is necessitated; whether a, new trial is warranted would depend upon the results of that he_aringK Koo is entitled to this minimal degree of due process before the State can take away a decade of his life.
Id. at 698-99 (emphasis added) (internal citation omitted).
I agree with the reasoning in Judge Makar’s dissent. Impeachment of the key prosecution witness. Dr. Saleh, could have been the difference between a conviction and a not guilty verdict. The sole, basis for the conviction is the testimony of Dr. Saleh, the main accuser, and his credibility is key. Whether his letter would show that he simply suffers from “buyer’s remorse” or that it would materially impeach his credibility is a matter that should have been heard at an evidentiary hearing. If the victim testifies at an evidentiary, hearing, .his credibility can be evaluated so that a factual determination can be made of the matériality of his new testimony in light of his prior testimony. Because Dr. Saleh’s letter was not “inherently incredible or obviously immaterial to - the verdict,” an evidentiary hearing should have been held in this case.
Accordingly, I would remand for an evi-dentiary hearing on the issues raised by Dr. Saleh’s statements.